UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| JOSEPH EDWARDS, | ) | CIV. 10-4176-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER GRANTING DEFENDANTS' |
| STATE OF SOUTH DAKOTA; | ) | MOTION FOR SUMMARY JUDGMENT |
| TIM REISCH, Secretary, | ) | |
| Department of Corrections; | ) | |
| DOUG WEBER, Warden, Sioux | ) | |
| Falls Penitentiary; | ) | |
| ROBERT DOOLEY, Warden, | ) | |
| Mike Durfee State Prison; and | ) | |
| DOES I, II, III, and IV, individually | ) | |
| and in their official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Joseph Edwards, brought an action against defendants, State of South Dakota, Tim Reisch, Secretary of the Department of Corrections, Doug Weber, Warden of the Sioux Falls Penitentiary, Robert Dooley, Warden of the Mike Durfee State Prison, and Does I, II, III, and IV, alleging violations of his constitutional rights and negligence. All defendants move for summary judgment based on the Eleventh Amendment, the Prison Litigation Reform Act (PLRA), qualified immunity, and/or the merits of plaintiff's claims. Edwards resists the motion. For the following reasons, defendants' motion is granted.

**BACKGROUND**

The facts, viewed in the light most favorable to Edwards, the nonmoving party, are as follows:

Edwards was incarcerated by the South Dakota Department of Corrections for felony convictions. Like all South Dakota prisoners, Edwards was initially housed at the South Dakota State Penitentiary in Sioux Falls, South Dakota, to undergo inmate classification and orientation. Officials determined that Edwards would be transferred to Mike Durfee State Prison in Springfield, South Dakota, which is considered a low-medium facility.[1] After Edwards was moved to Mike Durfee State Prison, he was placed in the West Crawford[2] housing unit on the third floor.

---

[1] Inmates classified as "low-medium" may be assigned to Mike Durfee State Prison. The classification system is based predominately on an assessment of the risk an inmate poses, which includes a determination of the risk of escape, propensity for violence, and the dangerousness of the inmate's prior behavior. Although Edwards was initially classified as a minimum security inmate, Edwards's extensive felony record elevated his custody level to the low-medium level.

[2] West Crawford houses the more aggressive inmates at Mike Durfee State Prison. The housing unit is a former college dormitory consisting of three floors. There are rooms on each floor, and each room can hold up to three inmates. Each floor has two emergency phones located near the end of the hallway and security cameras. A day hall is located on the first floor. During most of the day, inmates are restricted to their room, the floor their room is on, and the day hall. On the day in question, there were 230 inmates housed at West Crawford.

On the morning of August 5, 2009, approximately five months after Edwards arrived at Mike Durfee State Prison, Edwards was having a conversation with some friends outside of the mess hall. Leroy Ghost, an alleged member of the Gangster Disciples gang, interrupted the conversation. Edwards told Ghost to stay out of his business, and because he said this, Edwards anticipated an altercation would result. Once Edwards returned to West Crawford, Ghost approached him, shook his hand, and said that "everything was good." Docket 50 at 18. Later in the day, someone affiliated with Ghost again approached Edwards and told him not to worry and that "everything is good." Docket 44-2 at 18. Following these interactions, Edwards no longer believed there would be any sort of altercation with Ghost or other Gangster Disciple members.[3]

The rest of Edwards's day was spent either in the day hall or his room. Then, at about 10 p.m., Edwards was sitting alone in his room eating soup and watching television when at least two other inmates[4] entered his room and

---

[3] Edwards never told prison staff that he believed he was in danger because he believed the issue had been resolved. Furthermore, Edwards had never been threatened by anyone before and had no problems with any gangs in West Crawford.

[4] These inmates did not live on the third floor and thus were not permitted to be on the third floor.

assaulted him. One of the assailants attacked Edwards with a metal padlock[5] that was placed inside a sock. Although the assault only lasted a matter of minutes, Edwards was knocked unconscious and suffered numerous injuries, including a broken facial orbit, broken clavicle, bleeding on his brain, and several contusions.

At the time of the incident, there were two correctional officers, Officer Dustin Dummer and Officer Michelle Kral, supervising West Crawford.[6] Officer Dummer became aware of the assault shortly after 10 p.m. while he was doing rounds. As he came onto the third floor, Officer Dummer knew something was wrong because too many people were in the hallway. He then found Edwards on the floor of his room bleeding profusely from the head area. Edwards was transported to the hospital in Tyndall, South Dakota, and eventually air transported to Sioux Falls, South Dakota.

---

[5] Each inmate is provided a metal padlock to lock up personal items in their rooms.

[6] It was standard to have two correctional officers supervising West Crawford. Warden Robert Dooley decides what level of staffing is appropriate at each unit at Mike Durfee State Prison. It is his belief that two correctional officers per 300 inmates is adequate. Warden Dooley is "unsure" if his staffing decision to have only two officers per 300 inmates complies with standards set by the National Institute of Corrections (NIC) or the American Correctional Association (ACA).

Edwards filed this lawsuit on December 27, 2010, alleging that the prison staff failed to protect him from the assault. Edwards was released from prison on February 1, 2013.

## LEGAL STANDARD

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of her case on which she bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)).

Summary judgment is precluded if there is a dispute in facts that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For purposes of a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

**DISCUSSION**

Defendants move for summary judgment on Edwards's claims under multiple theories. First, because Edwards seeks only monetary damages, defendants argue they are entitled to sovereign immunity from any claims against them in their official capacities. Additionally, defendants argue that they are entitled to qualified immunity from claims against them in their individual capacities and that they are also entitled to summary judgment on the merits. Separately, defendants contend Edwards failed to exhaust his administrative remedies under the PLRA, and by failing to do so, his claims must be dismissed.

**I.    "Person" under § 1983**

With respect to Edwards's constitutional claims, § 1983 provides for an action against a "person" for a violation, under color of law, of another's civil or constitutional rights. *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). The United States Supreme Court has maintained that a state and its officials acting in their official capacities are not "persons" against whom a § 1983 claim for money damages may be asserted. *Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). Because Edwards seeks only money damages, his § 1983 claims against the State of South Dakota and the state officials in the their official capacities fail. Thus, defendants are entitled to summary judgment in their favor on the § 1983

claims alleged against the State of South Dakota and the defendants in their official capacities.

## II.    Qualified Immunity

The court now turns to Edwards's § 1983 claims against state officials acting in their individual capacities. Defendants assert the qualified immunity defense as a shield against civil damages.

"Qualified immunity shields government officials performing discretionary functions from civil liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012) (internal quotations omitted). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lights." *Id.* (quoting *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007).

The Eighth Amendment "encompasses an inmate's right to be protected from harm by fellow inmates," but "prison officials violate this right only when they exhibit a deliberate or callous indifference to an inmate's safety." *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002) (internal quotations and citations omitted). The Eighth Circuit Court of Appeals has consistently held "that qualified immunity for prison officials is appropriate where an Eighth Amendment failure-to-protect claim arises from inmate injuries resulting from a surprise attack by another inmate." *Id.* (citing *Curry v. Crist*, 226 F.3d 974, 978-

79 (8th Cir. 2000); *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998); *Prosser v. Ross*, 70 F.3d 1005, 1007 (8th Cir. 1995); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990)). In such cases, a prison official is entitled to qualified immunity unless a reasonable official would have known that the official's actions constituted a deliberate, callous, or reckless disregard for the inmate's safety. *Id.*

The facts that allegedly form the grounds for Edwards's claims all refer to the general prison conditions at Mike Durfee State Prison that existed at the time of the attack. First, Edwards alleges that there was an insufficient number of correctional officers assigned to supervise and protect the inmate population. Warden Dooley determined the number of correctional officers per inmate for the complexes at Mike Durfee State Prison. Warden Dooley's opinion is that two officers per 300 hundred inmates is sufficient under the circumstances that exist at the West Crawford complex.[7] Docket 51-1 at 41. At the time of the attack, there were two correctional officers supervising approximately 230 inmates housed in the West Crawford complex.

Edwards fails to establish how having two officers supervise 230 inmates rises to the level of a constitutional violation. *See Tucker*, 276 F.3d at 1003 (finding that without a court order governing supervision policies, a plaintiff

---

[7] While budget constraints play a role in Warden Dooley's staffing decisions, if additional officers were available, he "wouldn't necessarily assign them to West Crawford." Docket 51-1 at 42.

failed to show under-staffing at a prison facility was a constitutional violation). Edwards relies on two facts to support his position. First, there is no internal review of Warden Dooley's staffing decisions. Second, Warden Dooley is "unsure" if his staffing decision to have only two officers per 300 inmates complies with standards set by the National Institute of Corrections (NIC) or the American Correctional Association (ACA). Neither of these facts show a deliberate, callous, or reckless disregard for Edwards's safety. Even assuming the staffing was considered insufficient under standards established by the NIC or ACA—something Edwards has not shown—such evidence would "at best only demonstrate negligence." *See Tucker*, 276 F.3d at 1002.

Edwards asserts that the West Crawford complex is exceptionally dangerous and thus called for increased supervision. Edwards fails, however, to direct the court to facts that support his position. *See Mosley*, 415 F.3d at 910 (nonmoving party must demonstrate on the record the existence of specific facts). The evidence in the record actually shows quite the opposite. Former Unit Manager Mike Muller testified that there was "very little violence" among inmates. Docket 51-1 at 30. Officer Dummer testified that although he has broken up fights, fighting is "[n]ot real common." Docket 51-1 at 31. And Major Leland Tjeerdsma, who also works at Mike Durfee State Prison, stated, "We do have fights. We don't have a whole lot of assaults, what I consider assaults. Is it a problem? Yes, it's always a problem when somebody gets in a fight no matter

9

how many there are. It is a problem. Is it out of control? I don't believe so." Docket 51-1 at 32. In all, Edwards has not shown any of the individual defendants deliberately disregarded his safety in making staffing determinations.

Next, Edwards contends that the insufficient staffing was exacerbated by gang and gambling problems that exist at West Crawford. Yet, Edwards concedes that, prior to the attack, he never had any problems with gangs at West Crawford, Docket 61-4 at 3, and that he did not have any gambling debts. Docket 61-4 at 6. It is therefore unclear how any alleged gang or gambling problems that may have existed at West Crawford help prove that any defendant deliberately disregarded a substantial risk to Edwards's safety. Edwards's bare assertion that the presence of gang and gambling problems creates a substantial risk to his safety is not enough to overcome defendants' qualified immunity defense.

Lastly, Edwards claims there were very few safety and security measures in place to protect him. He notes that there were no emergency call buttons or phones within inmate rooms and that inmates have access to several dangerous items, including metal padlocks.

Mike Durfee State Prison is classified as a low-medium facility, meaning prisoners are provided more freedoms than they would receive at a higher security facility. For instance, inmates can move around more freely and are not

restricted to their cells. When in their housing unit, e.g., West Crawford, inmates can be in their room, in the bathroom, or in a central area called a day hall. Docket 50-1 at 8. Inmates are prohibited from going into other inmate's rooms or going onto floors other than the floor where their rooms are located. To police these rules, there are video cameras monitoring each floor, though not in the rooms, and correctional officers make rounds and conduct inmate counts. Inmates are also allowed access to more personal items, such as metal padlocks. These additional freedoms exist because Mike Durfee State Prison is a low-medium facility, which houses criminals who are less dangerous when compared to those criminals housed in higher security facilities.

Having emergency call buttons or phones within inmate rooms would have provided Edwards additional protective measures. The same can be said had metal padlocks been completely banned from the premises. But Edwards has not provided evidence that failing to take these precautions constituted a reckless disregard of a substantial risk to his safety. Edwards's mere say-so is not enough. He is required to submit actual evidence.

Edwards's generic complaints about the safety and security measures in place at Mike Durfee State Prison are not enough to establish that defendants' actions constituted a deliberate, callous, or reckless disregard for his safety. Prison officials are permitted "wide-ranging deference to preserve internal order and discipline and to maintain institutional security." *Jackson v. Everett*, 140

F.3d 1149, 1152-53 (8th Cir. 1998). Where, as here, a plaintiff's claims arise from a surprise attack by another inmate, bald assertions about prison conditions, without more, cannot defeat a defendant's assertion of the qualified immunity defense. *Tucker*, 276 F.3d at 1001 (finding that qualified immunity for prison officials is appropriate when a failure-to-protect claim arises from a surprise attack by another inmate); *see also Jackson*, 140 F.3d at 1152 ("[B]ecause prisons are dangerous places, housing the most aggressive among us and placing violent people in close quarters, prison officials are entitled to qualified immunity from claims arising out of a surprise attack by one inmate on another.") (internal citations and quotations omitted). As a result, defendants are entitled to qualified immunity on Edwards's remaining federal claims.[8]

## III.   State-Law Negligence Claim

Edwards's only remaining claim is his state-law negligence claim, which the court only has jurisdiction over pursuant to 28 U.S.C. § 1367. Docket 1 at 1. The court must decide whether it is appropriate to exercise supplemental jurisdiction over his negligence claim. *See Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1249 (8th Cir. 2006) ("It is within the district court's discretion to exercise supplemental jurisdiction after dismissal of the federal claim."). In doing so, the court balances factors such as judicial economy, convenience,

---

[8] Because Edwards's federal claims fail for other reasons, the court need not address whether his complaint should be amended or whether the PLRA required him to exhaust his administrative remedies.

fairness, and comity. *Id.* There are important state policy issues at play here, e.g., whether the State of South Dakota waived sovereign immunity for negligence actions against itself and prison officials, whether SDCL 3-21-8 and 3-21-9 create statutory immunity under these circumstances, and what duties are owed to prisoners under South Dakota negligence law. The South Dakota Supreme Court has not addressed many aspects of these issues. Therefore, the court finds Edwards's negligence claim is best left to the state courts and refuses to exercise supplemental jurisdiction over it.

## CONCLUSION

Unfortunately, prisons, even low-medium security prisons, are dangerous places, and Edwards experienced this reality firsthand when he was involved in a surprise attack. Prison officials face a difficult task in balancing inmate freedoms with safety and security. When attacks happen, prison officials are often the first individuals to be blamed. And while inmates have a right to be protected from other inmates, prison officials violate this right only when they exhibit a deliberate or callous indifference to an inmate's safety. Edwards failed to present any facts showing any defendants here exhibited a deliberate or callous indifference to his safety by being deliberately indifferent to a substantial risk of harm posed to Edwards. Therefore, defendants are entitled to qualified immunity in their individual capacities.

Moreover, states and their officials, acting in their official capacities, are not "persons" such that a § 1983 claim for money damages can be brought against them. Accordingly, it is

ORDERED that defendants' motion for summary judgment (Docket 43) is granted in their favor on plaintiff's § 1983 claims.

IT IS FURTHER ORDERED that plaintiff's state-law negligence claim is dismissed without prejudice.

Dated February 11, 2014.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE